UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROCHELLE BURRELL                                        CIVIL ACTION

VERSUS

LABOR READY, INC., ET AL                                NO. 09-227-BAJ-CN

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, .March 30, 2012

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

| | |
|---|---|
| **ROCHELLE BURRELL** | **CIVIL ACTION** |
| **VERSUS** | |
| **LABOR READY, INC., ET AL** | **NO. 09-227-BAJ-CN** |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Summary Judgment (R. Doc. 6) filed by defendant, Labor Ready Southeast, Inc. ("Labor Ready").[1] Plaintiff, Rochelle Burrell ("Burrell"), filed an opposition (R. Doc. 12) and a supplemental memorandum in support of her opposition (R. Doc. 14), in response to which Labor Ready filed a reply memorandum (R. Doc. 21). The matter was referred to the undersigned for a report and recommendation on March 7, 2012.

## FACTUAL & PROCEDURAL BACKGROUND

On or about March 5, 2009, Burrell filed this suit in state court, alleging that she was subjected to a racially and sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, and La. R.S. 23:331, *et seq.*, as well as violations of the National Labor Relations Act ("NLRA"), 29 U.S.C. §151, the Fair Labor Standards Act , 29 U.S.C. §201 ("FLSA"), and state laws relating to intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent

---

[1] Although Labor Ready, Inc., Labor Ready of Louisiana, Inc., and Labor Ready Central III, LP, are named as defendants in this matter, they are not valid business entities. Additionally, John Kreis, the branch manager at the Baton Rouge location of Labor Ready, was not served with the complaint by the plaintiff. The present motion is therefore filed solely by Labor Ready, the only validly served defendant in this litigation.

1

training, and negligent supervision. Her suit was removed to this Court on April 17, 2009.

Burrell's claims arise out of her employment with Labor Ready, a company that provides temporary workers to its customers who are in need of labor. Burrell was hired at Labor Ready's Baton Rouge location on November 10, 2005. *See*, R. Doc. 6-8, p. 1. She resigned from her employment with Labor Ready on January 3, 2007 and began working for Holsum Bakery on January 8, 2007. *See*, R. Doc. 6-8, pp. 2, 26; R. Doc. 6-9, p. 3. While Burrell was employed by Labor Ready, John Kreis ("Kreis"), the individual against whom she directs her harassment allegations, was the branch manager at Labor Ready's Baton Rouge location. According to Burrell's deposition testimony in connection with this matter, Kreis was a "nice person in his way," referred to her as a team leader, and told her, as well as other employees, that they were doing a good job. *See*, Burrell deposition, Exhibit A to Labor Ready's motion, p. 15, 32. Kreis also recommended Burrell for full-time employment with Holsum Bakery, one of Labor Ready's customers. *Id.*, p. 19.

At all times relevant, Labor Ready had in place an anti-harassment policy which states the following:

> Labor Ready will not tolerate conduct by any employee (or non-employee) that harasses, disrupts, or interferes with another's work performance or which creates an intimidating, offensive, or hostile work environment based upon their membership in a protected class.
>
> We want to maintain a working environment free from all forms of harassment, whether based upon race, gender, color, religion, ancestry, national origin, age, marital or family status, veteran status, physical or mental disabilities, on-the-job injuries, citizenship, HIV or Aids, sexual orientation, or the assertion of any other legally enforceable rights.
>
> Behavior such as telling ethnic jokes, making religious slurs, using offensive "slang" or other derogatory terms denoting a

person's race, age, national origin, disability, or mimicking one's speech, accent or disability, are examples of prohibited conduct and will not be tolerated in our organization. Retaliating against or harassing individuals by making derogatory comments regarding protected statuses or characteristics and other words or conduct that might create a hostile or offensive work atmosphere are also prohibited.

* * *

Harassment/Discrimination Reporting Procedure

Labor Ready does not tolerate harassment or discrimination:

- by anyone in a Labor Ready branch, including per diem or temporary employees;

- by another Labor Ready employee, supervisor or manager;

- by anyone at a customer's job site or any of our customer's employees, supervisors or managers;

- by following a customer's order;

- or by making dispatch or employment decisions.

Employees are required to immediately report any harassment or discrimination to the Care Line (toll free) at 888-843-4360, or any member of Labor Ready management.

Employees are required to report harassment or discrimination when:

- any employee believes that he/she has suffered harassment or discrimination;

- any employee (including per diem or temporary workers) reports harassment or discrimination to you;

- any employee (including per diem or temporary workers) reports that they witnessed another employee being harassed or discriminated against;

> - if a customer makes a discriminatory request; or
>
> - any employee believes that he/she has suffered illegal retaliation for reporting harassment or discrimination.
>
> Labor Ready has a policy of ensuring that employees who report harassment or discrimination will not be subject to illegal retaliation. However, intentionally false reports may subject the employee to disciplinary action. Any employee who believes that he or she is being retaliated against for reporting harassment or discrimination should immediately report the retaliation following the above reporting procedures.
>
> Labor Ready also makes a reasonable effort to keep the report confidential and tells others only on a "need to know" basis.
>
> Labor Ready treats each report on a case-by-case basis, but we generally conduct an investigation into the report and take prompt and corrective action if needed to stop the harassment or discrimination.

*See*, R. Doc. 6-8, p. 4-5.

Temporary workers, like Burrell, are required to sign an employment application and an acknowledgment to ensure that they understand the above-stated policy. The application, which was signed by Burrell, states the following:

> **Discrimination:** I understand that *Labor Ready* does not tolerate illegal harassment or discrimination. I understand *Labor Ready's* policy against harassment and discrimination. I understand that I should report any actual racial or sexual harassment or discrimination to any *Labor Ready* management or the Care Line at 800-843-4360 as provided in the policy and that I am protected against retaliation for having done so. I have received the Welcome to *Labor Ready* guidelines.

*See*, R. Doc. 6-7, pp. 40-41. The acknowledgment signed by Burrell after she was hired by Labor Ready provides:

> 7. I understand *Labor Ready's* anti-harassment and discrimination policy. I will not participate in any illegal

4

> harassment or discrimination.  I understand that I must report any harassment or discrimination to any Labor Ready management or the Care Line at 800-843-4360.

*Id.*, p. 44.

Although Burrell's petition alleges both sexual and racial harassment, she testified, during her deposition, that her EEOC claims (and thus, this lawsuit) relate only to racial harassment.  *See*, Exhibit A to Labor Ready's motion, Burrell deposition, p. 31.  Her opposition and supplemental memorandum in support of her opposition also only address a racial harassment claim.  Specifically, Burrell testified, at her deposition, that Kreis made the following allegedly offensive comments to her that were purportedly racially-based: (1) he referred to himself as a "pimp" on three occasions; (2) that "he had a gun in his car" on one occasion; (3) he called the temporary workers "you peoples" several times; (4) he told the temporary workers "you go out and get the money and bring it to me that's the American way" on two occasions; and (5) he made the comment that "he put our nuts on a chopping block" on one occasion.  *Id.*, pp. 46-47.

During her deposition, Burrell admitted to having signed Labor Ready's employment application and Acknowledgments concerning its anti-harassment and discrimination policy, admitted that she understood that Labor Ready did not tolerate illegal harassment or discrimination based on race or sex, and admitted that she knew she could report any harassment she felt she was experiencing to Labor Ready's Care Line.  *Id.*, pp. 20-21, 23-24.  Both a letter dated April 11, 2007 from Labor Ready to Burrell as well as Burrell's deposition testimony indicate that, despite her knowledge of Labor Ready's anti-harassment policy and its reporting procedures, the first time she reported the alleged harassment by Kreis was to an attorney, Jim Arruebarrena, after she had resigned from

employment with Labor Ready. *Id.*, p. 44-45, 49; R. Doc. 6-8, p. 13-14; R. Doc. 14-1. That attorney then sent a letter to the Chief Executive Officer of Labor Ready, Steven Cooper, on February 16, 2007, alleging that Burrell was subjected to a race-based hostile work environment when she was employed at Labor Ready. *Id.* There is no competent evidence before the Court indicating that Burrell ever reported any harassment while she was employed by Labor Ready in accordance with its anti-harassment policy.[2]

After receiving the letter from Burrell's attorney, Labor Ready's in-house legal investigator, Brian Moran, conducted an investigation of the allegations of harassment, which included interviewing 19 employees (permanent and temporary) and reviewing documents relevant to Burrell's allegations. *See*, R. Doc. 6-8, ¶7. Although Labor Ready contends that it was unable to substantiate many of Burrell's allegations, it nevertheless terminated Kreis' employment on May 10, 2007, on the basis that his conduct was inappropriate for a branch manager. *Id.*, ¶8.

## LAW & ANALYSIS

I.  **Summary Judgment Standard:**

---

[2] Although Burrell indicates, in an affidavit attached as Exhibit 2 to her opposition to the present motion, that she reported the alleged harassment to Labor Ready's Care Line, there is no other evidence of such a report, and Burrell's deposition testimony contradicts her affidavit in that regard. Considering the contradictions in Burrell's statements and the fact that Labor Ready has no record of Burrell ever reporting any harassment to its Care Line, the undersigned does not consider Burrell's self-serving statement in her affidavit to be competent evidence that she reported harassment in accordance with Labor Ready's anti-harassment policy while still employed with Labor Ready. *See, Harrell v. Wal-Mart Stores East, Inc.*, 2001 U.S. Dist. LEXIS 10148, *12-13, n. 23 (M.D.La. 2001)(citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996)(A plaintiff "may not manufacture a dispute of material fact to defeat summary judgment by using an affidavit that impeaches, without explanation, sworn testimony").

6

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[3] Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[4]

## II.  State law claims:

Burrell's state law claims of hostile work environment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent training, and negligent supervision are time-barred and should be dismissed. Burrell has not disputed that she worked for Labor Ready until January 3, 2007, and that she did not file the present lawsuit until more than two (2) years later, on or about March 5, 2009. Each of her state law tort claims (*i.e.*, her intentional and negligent infliction of emotional distress claims and her negligent hiring, training and supervision claims) is subject to a one (1) year

---

[3] In reviewing a motion for summary judgment, a court ". . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[4] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law. *Id.*

liberative prescriptive period.[5] Furthermore, pursuant to La. C.C. art. 3492, her state law discrimination claim is subject to a one (1) year prescriptive period,[6] with the possibility of that period being suspended for up to six (6) months during proceedings before the Equal Employment Opportunity Commission ("EEOC").[7] Thus, Burrell's state law racial discrimination/hostile work environment claim is subject to, at the longest, an eighteen (18) month prescriptive period. Since she did not file her state tort claims within one (1) year of her resignation from Labor Ready and her state harassment/hostile work environment claim within eighteen (18) months of her resignation, her state law claims should be

---

[5] *See, Schonekas, Winsberg, Evans & McGoey, L.L.C. v. Cashman*, 11-449 (La. App. 5 Cir. 12/28/2011), 2011 WL 6821450 (One year prescriptive period applies to intentional infliction of emotional distress claim); *Lanzas v. American Tobacco Co., Inc.*, 2002 WL 1973817 (5th Cir. 2002)(negligent and intentional infliction of emotional distress claims subject to one-year prescriptive period that begins to run from the date of the injury); *St. Tammany Parish Hosp. v. Trinity Marine Products, Inc.*, 2010-1481 (La. App. 1. Cir. 2/16/12), 2012 WL 505836 (La. C.C. art. 3492 Footnote (b) states that the one year prescription applies to all delictual actions, and it further explains that "the notion of delictual liability includes: intentional misconduct, negligence, abuse of right, and liability without negligence").

[6] *See, Sears v. Home Depot, USA, Inc.*, 2006-0201 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, citing *King v. Phelps Dunbar, LLP*, 98-1805 (La. 6/5/99), 743 So.2d, 186-87 (As a matter of law, claims of employment discrimination brought under Louisiana state law are governed by the one-year liberative prescription of La. C.C. art. 3492).

[7] *See,* La. R.S. 23:303(D)(providing that "[a]ny cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months).

dismissed with prejudice as prescribed.[8] [9]

**III.    NLRA and FLSA claims:**

Although Burrell's petition asserts violations of the NLRA and FLSA by Labor Ready, the petition contains no allegations supporting those alleged violations.  Moreover, Burrell was unable to provide any testimony supporting such claims during her deposition.  *See*, Exhibit A to Labor Ready's deposition, pp. 50-54.  In fact, her counsel indicated that the references to those Acts within the petition may have been "typos."  *Id.*  Finally, Burrell failed to provide any arguments or evidence in her opposition refuting Labor Ready's summary judgment motion as to her NLRA and FLSA claims.  Accordingly, because there are no allegations or evidentiary support before the Court for such claims, they should likewise be dismissed with prejudice.

**IV.    Title VII racial or sexual harassment/hostile work environment claims:**

As discussed above, since Burrell indicated, during her deposition, that her claims in this suit are based upon racial, rather than sexual harassment, her sexual

---

[8] In her opposition, Burrell contends that her state law hostile work environment claim should not be dismissed as prescribed because she was delayed in filing suit since the EEOC took too long during its proceedings and did not timely issue a Notice of Right to Sue letter, and as a result, the Court should modify existing law (namely, the six-month suspension period set forth in La. R.S. 23:303(D)), to suit her needs.  However, Labor Ready correctly notes that, under Louisiana law, Burrell was not required to file an EEOC charge prior to filing suit for her state law claims of harassment/hostile work environment and for her intentional and negligent tort claims.  Thus, there was nothing preventing Burrell from timely filing her state law claims and later amending her petition to add her federal Title VII claims after receiving her Right to Sue letter from the EEOC.  Accordingly, Burrell's state law claims should be dismissed as prescribed, regardless of what delays were brought about by the EEOC's investigation of her federal Title VII claims.

[9] Even assuming Burrell's state law claims were not prescribed, because the undersigned determines below that all of her federal claims over which this Court has original jurisdiction should be dismissed with prejudice, the Court should also decline, in its discretion, to exercise jurisdiction over her state law claims and dismiss them in any event.  *See,* 28 U.S.C. §1367 (A district court may decline to exercise supplemental jurisdiction over state law claim(s) if it has dismissed all claims over which it has original jurisdiction or if the state law claim(s) would predominate over any remaining federal claim(s)).

9

harassment/hostile work environment claim should be dismissed.  Additionally, Burrell has failed to come forward with sufficient evidence establishing a *prima face* case of race-based hostile work environment/harassment, and such claim should therefore also be dismissed. To establish a *prima face* case of a racially-based hostile work environment/harassment, an employee must produce competent evidence of the following elements:  (1) that she is a member of a protected racial class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her race; (4) that the harassment was so severe and pervasive as to alter a term, condition, or privilege of employment and create an abusive working environment; and (5) that the employer knew or should have known of the harassment and failed to take remedial action.  *Parker v. State of Louisiana Dept. of Educ. Special School Dist.*, 323 Fed. Appx. 321, 325 (5th Cir. 2009).  "[W]here the harassment is allegedly committed by a supervisor with immediate or successively higher authority [ as in the present case], the plaintiff employee needs to satisfy only the first four of the elements listed above."  *Id.*, quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

The only harassment/hostile treatment that Burrell contends she suffered was the above-referenced allegedly offensive comments that Kreis made on several occasions.  A review of the applicable jurisprudence indicates that the mere utterance of offensive comments of that nature "pale in comparison, both in severity and frequency," to the kinds of verbal harassment that the U.S. Fifth Circuit Court of Appeals and other circuits have

held would support a Title VII hostile work environment claim.[10]  In fact, in the case of *White v. Government Employees Ins. Co.*, 2012 WL 13783 (5th Cir. 2012), the Fifth Circuit very recently again held that conduct more severe than that in the present case was insufficient to satisfy the plaintiff's *prima facie* case of a race-based hostile work environment.  In *White*, the Fifth Circuit held that the incidents alleged by the plaintiff, while they "might [have] cause[d] offense or indicate[d] strife" between the plaintiff and her coworkers and supervisors, were not evidence of race-based harassment.  According to the Court of Appeals, the record contained evidence of only a few incidents that reasonably could be characterized as race-based:  a manager's reference to an African-American client as a "nigger" in the plaintiff's presence; the manager's references to the set-up of the office in question as "ghetto" or a "FEMA trailer;" and the manager's comment that he knew a coworker "always wanted to be a white female."  The Fifth Circuit held that those incidents

---

[10] *Compare, Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000)(holding that a hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir. 1991)(holding that the plaintiff survived summary judgment where the plaintiff was subjected to "nigger jokes" for a ten-year period, and the plaintiff's workstation was adorned with a "human-sized dummy with a black head"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001)(reversing summary judgment where the plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey"); with *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 328 (finding that the evidence was insufficient to establish a hostile work environment where a supervisor's comments about inner-city "ghetto children" ceased upon plaintiff's request, and the supervisor's other arguably offensive comments were "isolated incidents"); *Harrington v. Disney Reg'l Entm't, Inc.*, 276 F. App'x (11th Cir. 2007)(unpublished)(holding that the only racially offensive conduct the plaintiff complained of, "being called 'ghetto' [by several white colleagues and a manager] and once or twice overhearing co-workers being described as monkeys, was not pervasive enough to alter [the plaintiff's] conditions of employment"); *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982)(no hostile work environment where the plaintiff was directly called racial epithets by coworkers); *Grant v. UOP, Inc.*, 972 F.Supp. 1042 (W.D.La. 1996), aff'd 122 F.3d 1066 (5th Cir. 1997)(holding that five separate utterances of the word "nigger" directly to the plaintiff were insufficient to establish a hostile work environment claim); *Smith v. Beverly Health and Rehab. Serv., Inc.*, 978 F.Supp. 1116 (N.D.Ga. 1997)(holding that several utterances of racial epithets by a supervisor were insufficient to support hostile work environment claim); *McCray v. DPC Indus., Inc.*, 942 F.Supp. 288 (E.D.Tex. 1996)(holding that five uses of the terms "black Yankee" and "son," two racial jokes, and the use of the word "nigger" were insufficient to establish a hostile work environment claim).

did not rise to the level of severity or pervasiveness required to support a hostile work environment claim. None of them involved physically threatening or humiliating conduct, as opposed to mere offensive utterances; the manager's use of the term "nigger" and his comment to a coworker were isolated remarks; the "nigger" comment was not directed at the plaintiff and the plaintiff only heard about the remark made to the coworker; and while the manager's use of the terms "ghetto" and "FEMA trailer" may have been "racially inappropriate," the record did not indicate when the manager used those terms or how often the plaintiff heard him describe the set-up of the office in question in that manner. *Id.*, at *5.[11]

In the present case, in addition to the fact that the comments in question are not of the severity required to sustain a Title VII hostile work environment claim, Burrell also has not produced any jurisprudence or evidentiary support, other than her own self-serving allegations (which are insufficient to sustain her claim at the summary judgment stage),[12]

---

[11] *See also, Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed.Appx. 104 (5th Cir. 2009)(holding that instances in which employee's coworker allegedly commented that she would "beat the tar off of him" and called him "boy" did not rise to the level of severity or pervasiveness required to show hostile work environment under Title VII; *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999)(stating that "[d]iscourtesy or rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment"); *Baker v. FedEx Ground Package System Inc.*, 278 Fed. Appx. 322 (5th Cir. 2008)(Supervisor's comments as to employee, an African-American female, including that "she did not want to work with people like" employee and that "whites rule," were not sufficiently severe and did not unreasonably interfere with employee's work performance, as required to establish a race-based hostile work environment).

[12] *See, Smith v. Southwestern Bell Telephone Co.*, 2012 WL 28256 (5th Cir. 2012)(explaining that the U.S. Fifth Circuit Court of Appeals has repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment); *Cavalier v. Clearlake Rehabilitation Hosp., Inc.*, 306 Fed. Appx. 104 (5th Cir. 2009)(Subjective belief of racial motivation, without more, is insufficient to show a hostile work environment).

demonstrating that the comments in question were actually racially-motivated[13] and that they occurred frequently enough to be considered "pervasive" conduct that interfered with her "work performance."[14] To the contrary, the evidence before the Court indicates that Burrell was a "good worker," that Kreis "liked her" and thought she was a "good worker," that Kreis even referred to her as a "team leader," and that she was always able to perform her job well. *See*, Exhibit A to Labor Ready's motion, pp. 15-16, 25-27, 44.[15] Finally, Burrell has not provided any evidence of conduct so "extreme" as to "amount to a change in the terms and conditions of her employment."[16] *Faragher v. City of Boca Raton*, 524

---

[13] Although, in her opposition, Burrell indicates that, while she does not recall to whom Kreis made most of the comments in question (*i.e.*, whether the comments were made to African-Americans and/or whites), she states that he only called African-Americans "you peoples." However, it is only her subjective belief that the phrase "you peoples" is evidence of racial animus; there is nothing about that particular statement that inherently suggests that it is a racially-motivated statement. Furthermore, the fact that Kreis' employment with Labor Ready was ultimately terminated for "inappropriate conduct" does not prove that his comments were racially-motivated. Finally, this Court has specifically held that "[t]here is nothing directly or indirectly race-based about the words, 'Bubba' or 'you people' or 'your people'," and such terms, even if used on several occasions when speaking to an African American employee, do not constitute direct evidence of race discrimination. *See, Stone v. Parish of East Baton Rouge*, 2008 WL 4534374, *7 (M.D.La. 9/30/08).

[14] *Id.*, at *5, citing *Johnson v. TCB Constr. Co.*, 334 F.App'x 666, 671 (5th Cir. 2009)(unpublished)(finding insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn nigger" was isolated; there was no evidence of the objective effect of that comment on the plaintiff's work performance; and although there was evidence that the supervisor frequently used the term "nigger," those other comments were not uttered in the plaintiff's presence, and there was no evidence that they affected the plaintiff's job).

[15] As Labor Ready points out in its motion, the fact that Kreis gave Burrell a Christmas tree and decorations for her mother's grave one month before she resigned from Labor Ready and gave her a recommendation for her job with Holsum Bakery undercuts plaintiff's suggestion that the workplace was permeated with racial harassment. *See*, Exhibit A to Labor Ready's motion, p. 19.

Furthermore, although Burrell relies upon one incident wherein Kreis was involved in an argument with two other African-American employees, which resulted in the police having to be called to the place of employment, in support of her argument that the terms and conditions of her employment were impacted, she has not indicated specifically how an argument in which she was not even involved impacted her own work performance.

[16]"[T]he U.S. Supreme Court has held that "Title VII is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Lauderdale v. Tex. Dep't of Criminal*

13

U.S. 775, 788, 118 S.Ct. 2275 (1998). Accordingly, Burrell's race-based harassment/hostile work environment claim should also be dismissed with prejudice.

**V.** ***Faragher-Ellerth* affirmative defense:**

Finally, even if Burrell could establish a *prima facie* case of race-based harassment/hostile work environment, such claim would nevertheless be subject to dismissal because Labor Ready is entitled to the *Faragher-Ellerth* affirmative defense. Such defense provides that an employer can avoid vicarious liability for a racially hostile work environment by demonstrating that: "(1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the harassed employee unreasonably failed to take advantage of any preventive opportunities provided by the employer." *Williams v. Administrative Review Board*, 376 F.3d 471, 478 (5th Cir. 2004), citing *Faragher*, at 787, and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257 (1998).

As discussed above, Burrell admitted, during her deposition, that she knew about and understood the anti-harassment policy that Labor Ready had in place at the time that she was an employee with that company. By implementing such policy, Labor Ready exercised reasonable care to try and prevent and promptly correct any harassing behavior by its employees. Burrell also admitted that she was aware that the policy required her to report any harassment to the Labor Ready Care Line. *See*, R. Doc. 6-8, p. 13. In her opposition to the present motion, Burrell contends that she did complain to Labor Ready of harassment and that a letter from Labor Ready dated April 11, 2007 confirms that she

---

*Justice*, 512 F.3d 157, `63 (5th Cir. 2007)(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

14

made that complaint. However, as noted above, a review of Labor Ready's April 11, 2007 letter simply indicates that Burrell's complaint of harassment was not made until February 16, 2007, when her attorney wrote a letter to Labor Ready's CEO, which was over a month after Burrell resigned from her employment with Labor Ready on January 3, 2007. Burrell does not present any other competent evidence demonstrating that she made complaints of harassment to Labor Ready during the time of her employment there. Furthermore, even though Burrell's complaint of harassment did not arise until after she had resigned from employment with Labor Ready and was not submitted through the channels provided for in Labor Ready's anti-harassment policy, Labor Ready nevertheless took prompt remedial action in response to her complaint by conducting an investigation, interviewing witnesses, and ultimately terminating Kreis' employment.

In sum, the record before the Court indicates that Burrell failed to take advantage of the opportunities Labor Ready had created for employees to promptly prevent and correct harassing behavior. As a result, Labor Ready is entitled to the *Faragher/Ellerth* affirmative defense, and Burrell's harassment/hostile work environment claim should also be dismissed on that basis.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion for Summary Judgment (R. Doc. 6) filed by defendant, Labor Ready Southeast, Inc., should be **GRANTED** and that the claims of plaintiff, Rochelle Burrell, against defendant, Labor Ready Southeast, Inc., as well as her claims against the other defendants who were not validly served in this litigation, Labor Ready, Inc., Labor Ready of Louisiana, Inc., Labor Ready Central III, LP, and John

Kreis, should be **DISMISSED WITH PREJUDICE** and judgment entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, March 30, 2012.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**